## McCaskill *et al. vs.* Lathrop & Company.

1. A trustee for a married woman and her children having purchased a plantation and taken a bond for titles, paying a part of the purchase money and giving his notes as trustee for the balance, and the family, including the husband, having gone into possession, and while so in possession, the husband having procured the bond from the trustee and surrendered it to the vendor, who made a deed conveying the premises directly to the husband, no trust whatever being declared or indicated in the deed, the purchase money having been previously paid in full out of the trust fund; and the husband, while in possession with his family, and after the deed to him had been recorded, which record was made within twelve months after execution and delivery, having obtained credit from a firm who had no notice of the trust, and he, while so in possession, having conveyed the premises to said firm by a deed absolute in form, but made as a security for his indebtedness existing, and further indebtedness then stipulated to accrue, taking from the firm a bond for titles; and the husband having afterwards, and before the firm received any notice of the trust, received the benefit of this further credit; and still later, and whilst the trust was unknown to the firm, a full and final settlement having taken place, in which the firm's bond for titles to the husband was canceled, and his whole indebtedness to them was extinguished, the deed being left to stand, and

the extinction of the indebtedness being treated as payment for the land; and the husband having then rented the premises from the firm, and having from thenceforth occupied as their tenant:

*Held,* that the firm were *bona fide* purchasers for value from a trustee whose trust character was not disclosed on the face of his title, nor made known to them in due time, and that, in equity, their right to the land is superior to that of the beneficiaries of the trust.

*Held,* also, that though the original conveyance to the firm was infected with usury and therefore void as title until the final settlement took place, yet, the settlement having taken place when there was no usury law in existence, all laws on the subject of usury having been repealed, and the vendor having then rented the premises from the firm as his vendees, and the agreed purchase money having been fully paid, the title of the firm became so far complete that equity ought to decree it to be absolute, that forum having been selected by the beneficiaries of the trust.

2. Parol evidence of the settlement and of the terms thereof, and of the intention of the parties in canceling the bond, extinguishing the indebtedness, and leaving the deed to stand, was admissible, it not appearing that any written memorial of these matters ever existed.

Equity. Trusts. Debtor and creditor. Usury. Settlement. Evidence. Before Judge CRISP. Macon Superior Court. December Term, 1878.

In 1839, Nixon bequeathed to his daughter Eliza and her children, to their separate use, etc., certain property. Eliza married McCaskill, by whom she had three children now living. To carry out the provisions of the will, McCaskill and wife petitioned the superior court of Bibb county to appoint John L. Parker as trustee. It was so ordered. Parker accepted the trust, and remained such trustee until his death. The title to the trust property, under the circumstances detailed in the first head-note, became vested in Lathrop & Company, and this bill was filed by the beneficiaries, against them and McCaskill, to establish the trust, to cancel the conveyance to Lathrop & Co., and to enjoin them from interfering by suit or otherwise with the possession of complainants. The answer was also in the nature of a cross-bill, with a prayer to settle title, etc. Upon the

trial had, the pleadings and special verdict established, in substance, the facts stated in such head-note.   Whereupon the chancellor decreed that Lathrop & Co. were the owners in fee simple of the lands and personal property covered by the deed to them from McCaskill, and that the receiver, appointed upon the cross-bill of defendants, within thirty days from the adjournment of the present term, deliver the possession thereof to defendants, and account with them for the rents, issues and profits.

The death of J. W. Lathrop, Sr., having been suggested, the litigation proceeded in the name of the surviving members of the firm of Lathrop & Co.

The complainants moved to set aside the verdict and decree upon the following grounds:

1. Because the court erred in submitting to the jury to find what was the intention of the parties in surrendering the bond for titles, and in allowing Warren to testify that it was the intention of McCaskill and himself to vest the title in defendants by such surrender.

2. Because the court erred in holding, on the rendition of the decree, that the legal title to said land was not in complainants.

3. Because said decree is illegal in this, that the title to said land being in complainants, they have the right to hold it, whether Lathrop & Co. had notice of the trust or not.

4. Because the decree is illegal on the ground that the deed of 1870 was infected with usury.

5. Because the decree is illegal in holding that the interest of complainants was a secret trust, and the mortgage (deed) must prevail over it, and that the possession by the beneficiaries did not give defendants notice of the trust.

6. Because the decree was illegal in holding that the plea of usury was barred.

The motion was overruled, and complainants excepted.

HAWKINS & HAWKINS, for plaintiffs in error, cited 33 *Ga.*, 231; 35 *Ib.*, 63; 12 *Ib.*, 465; 29 *Ib.*, 485; 57 *Ib.*, 95.

S. HALL & SON, for defendants, cited, on legal effect of conveyance with bond to reconvey, 54 *Ga.*, 45; 55 *Ib.*, 650, 412; 2 White & Tudor's Lead. Cases, 418, note; 12 Ala., 678; 1 Pick., 213; 5 Gill & J., 75; 2 Edwards Ch., 535; 1 Caine's Cases, 1; 19 Vermont, 9; 3 Dana, 174; 12 Mass., 465; 7 Cent. L. J., 367; 7 Reporter, 44; 4 Kent's Com., 143; 2 Washb. Real Prop., 62; 1 Hil. Real Prop., 546; 1 Hil. on Mort., 84. Deed, defeasance and instrument canceling latter were all recorded, 2 White & Tudor's Lead. Cas., 446; 2 John. Ch., 18; 15 John., 555; 7 Watts, 261; 7 Watts & Serg., 335; 17 Serg. & R., 70. Lathrop & Co. were purchasers for valuable consideration without notice, 2 White & Tudor's Lead. Cas., 79; Code, §2329; 7 *Ga.*, 530; 19 *Ib.*, 66; 37 *Ib.*, 392; 40 *Ib.*, 259; 41 *Ib.*, 202; 42 *Ib.*, 95; 51 *Ib.*, 13, 291. Complainants cannot set up usury in deed, 37 *Ga.*, 364. Destruction of defeasance converted deed into absolute conveyance, not to secure, but to pay the debt; effect of usury, etc., 61 *Ga.*, 38; *Campbell & Jones vs. Murray et al.*, Aug. T., 1878; Tyler on Usury, 436, 437.

BLECKLEY, Justice.

1. Parker, as trustee for the complainants, purchased the premises from Powers, in the year 1856, paid a part of the purchase money, gave his notes, as trustee, for the balance, and took from Powers a bond for titles. The notes were afterwards paid out of the trust fund. The complainants as a family, including McCaskill, the husband and father, went into possession, and so remained. The bond for titles was turned over by the trustee to McCaskill, and in February, 1864, he surrendered it to Powers, the latter then conveying to McCaskill the premises by absolute deed in fee simple. This deed was duly recorded in the month following its execution. It indicated no trust whatever. After this McCaskill held himself out as owner of the property, the possession being still in the family of which he was the

head.  In the early part of the year 1870, J. W. Lathrop & Co., believing him the owner, and having no notice to the contrary, advanced him a considerable sum, at a rate of interest which was usurious.  In December of that year they agreed to make him a further advance of fifteen hundred dollars at a like rate, on condition that he would secure them for both loans by a conveyance of the premises and certain personalty.  He made them an absolute deed, and they gave him a bond for titles, conditioned to convey back to him on payment of the stipulated amount.  The deed was recorded May 30, 1871.  In the course of subsequent dealings, not only the fifteen hundred dollars were advanced, but considerably more, so that at the close of 1873 his whole debt amounted to $4,900.00, being $900.00 in excess of the estimated value of the property.  In January, 1874, all usury laws having been repealed in the preceding year, a full settlement was had; the result of which was that McCaskill surrendered to Lathrop & Co. their bond for titles, they extinguished their entire debt against him, the deed of 1871 was left to stand, and he rented the premises from them for the year 1874.  During all this time Lathrop & Co. were ignorant of any trust, or of any equity in the complainants, or of any defect in McCaskill's title.  He rented from them again for the year 1875, and it was while this second year of his tenancy was running, that the present bill was filed, and that notice of the trust, and of the equitable rights of complainants came to Lathrop & Co.  In like manner, it seems that until this year, the complainants remained in ignorance that Powers had conveyed to McCaskill or that McCaskill had conveyed to Lathrop & Co.  It is obvious that all active possessory acts over the property were exercised by McCaskill from the time of the purchase from Powers in 1856, to the time of his renting from Lathrop & Co. in 1874.  There was no possession in the complainants as distinct from that which he, as head of the family, personified before the world.  Of course, when he acquired the formal legal title by the deed from Powers,

in 1864, he became affected with a trust in favor of his wife and children, but the trust was a secret one as to Lathrop & Co. when they extended to him credit upon the faith of his apparent ownership, and when they extinguished their whole indebtedness against him as a full and final settlement in actual purchase of the land and other property. The deed which he had made to them was void as title because infected with usury, but at the time of the settlement there was no law against receiving usury even on a past debt. The settlement was a perfectly lawful one, and even if it did not operate to put life in the usurious deed by way of ratification or confirmation thereof, it rooted a perfect equity which, together with the contract of renting which took place at the same time, on the part of McCaskill, divested the latter of his legal title to the land and clothed Lathrop & Co. with the same. It is manifest that from that time forth, McCaskill was estopped to assert any title whatever against Lathrop & Co., he having been paid his purchase money in full, and having become their tenant, and commenced to hold accordingly. This holding went on through the year 1874, and by a second contract of renting, was extended into the year 1875, and was pending when the bill was filed. To break up so powerful an equity, and drive Lathrop & Co. from the position of owners, the complainants would have, at least, to tender them the money which they advanced to McCaskill, and lawful interest on the same; and this the bill does not do. Equity is the forum of the complainants' own choice, and yet they do not propose to repair the consequences of what their original trustee, by his negligence in delivering the Powers bond to McCaskill, and by not attending to the use made of it, put it in the power of McCaskill to do, and of what McCaskill did actually do, in obtaining the money of innocent parties who trusted to his apparent title, duly recorded. It is plain enough that Powers ought not to have conveyed to McCaskill, that Parker, the trustee, ought to have seen to it that the bond of Powers was not surrendered without a

proper conveyance, and that McCaskill ought never to have dealt with the property as owner; and it is far more equitable to remit the complainants for redress to any or all of these three, than to allow them to strip Lathrop & Co. without making or tendering adequate compensation. On a comparison of equities, that of Lathrop & Co. is the superior; and, under the circumstances, their title is so far complete that equity ought to decree it to be absolute, the answer being also a cross-bill with a sufficient prayer to cover this relief.

2. The parol evidence objected to was clearly admissible. Warren, the witness, was one of the firm of Lathrop & Co., and the member who represented the firm in the transaction. It does not appear that the agreement to surrender the bond, cancel the debt, and leave the deed to stand as evidence of title, was in writing, and no law that we are aware of requires such an agreement to be in writing. It was a parol understanding actually executed, and of which McCaskill took the benefit. Surely it was relevant to ascertain the purpose and intention with which the parties produced such an important change in their relations. Was the debt canceled as a full payment for the land, etc., or was there some other object? And did the surrender of the bond have a like purpose or some other? What was the intention was material for the jury to decide, for the intention qualified the act and gave it significance.

We have disposed of the case without indorsing all the views of the court below as the motion for a new trial represents them. It may be that we might differ with that court in some of its reasoning, but we entirely agree with it in the conclusion.

Judgment affirmed.