BULLARD *vs.* JONES, administratrix, *et al.*

1. Though a deed may have been made in 1872, with bond to re-convey, to secure the payment of a usurious debt, yet if in June, 1873, the parties came together, and the debtors surrendered the land absolutely to the creditor in payment of the debt, it being agreed that the bond should be delivered up and canceled, the title became fixed in the creditor, and the debtors could not afterwards recover the land, though the bond may not have been in fact surrendered and canceled.

2. If the land was placed by the debtors in the hands of the creditor with the agreement that he was to sell it, pay himself, and then turn over the excess to the debtors, no time being specified within which this was to be done, and no agreement being made as to its use meanwhile, the creditor was bound to use such diligence and efforts to sell as good faith and fair dealing required.

(*a.*) If he failed to sell without fault or negligence on his part, and received during the time of such holding any benefit resulting from the use and occupation of the land, he would be liable to account for the same. He would also be entitled to such allowances for legitimate expenses incurred in and about the performance of his obligation as were necessary to make the land available for use as well as to protect its ownership and possession.

(*b.*) It being in controversy which of these hypotheses was true, if the creditor bargained the land to another for less than the amount of the debt, and the debtors knowing it made no objection, this was a circumstance which the jury might consider as tending to show that the debtors understood their debt to be extinguished.

3. Where the creditor bargained the place to another and a part of

the purchase price was paid, but subsequently the contract was not consummated, it was error to charge that the creditor was liable to the debtors both for rents and profits from the time he took possession and also for the amount received on the sale.

4. The verdict does not conform to the evidence in the case.

Title. Interest and Usury. Equity. Debtor and Creditor. Contracts. Before Judge PATE. Twiggs Superior Court. March Term, 1881.

Reported in the decision.

LANIER & ANDERSON; HILL & HARRIS; JNO. F. GLOVER, for plaintiff in error.

HALL & SON; DUNCAN & MILLER; J. D. JONES, for defendants.

CRAWFORD, Justice.

The defendants in error, Jones & Watson, being indebted to one Sutton a balance on purchase money for land, applied to Bullard, the plaintiff in error, for a loan with which to complete the payment due to Sutton. The loan was effected January 18, 1872, by Sutton's making Bullard a deed to the land to secure the note, and by his executing a bond for titles to Jones & Watson to make them a deed when the note was paid. The sum borrowed was $1,500.00, the interest agreed upon 2½ per cent. a month, making the note at maturity, December 25th, 1872, amount to $2,000.00. Not being paid, in June, 1878, it was renewed and extended to December 25th, 1873, by adding in the accrued and accruing interest, which brought up the amount due at that time to $2,631.58. The bond for titles was also renewed to correspond with the note. Jones & Watson failed to meet this note also at maturity, whereupon, soon thereafter, an agreement was entered into by the parties, which not being in writing, and not distinctly understood between them, causes this litigation.

Jones & Watson claim that, seeing the interest was eating up the land, they proposed to Bullard, as he had the title, to take the land, sell it, pay himself, and pay them the overplus, which he agreed to do.

On the other hand, Bullard says that the land was surrendered to him in payment of the note, and that he took possession as the absolute and unconditional owner.

He went into possession of the land in February, 1874, and having had it for four years, and rendering no account of any sale, Jones & Watson brought this suit, praying an account from him of the amount received from the sale, and rent of the land; the amount of usury; and a decree declaring the contract void for usury; that the deed be canceled, and that the land be decreed to be the property of Jones & Watson, after paying whatever sum may be due to Bullard.

The defendant denied all liabity to account to them for any thing; alleged that one of the lots of land had been levied on for the taxes of Jones & Watson, and also under an execution against Sutton; that he was at great trouble and expense in protecting the title; that he had sold the land to one Walker for $3,000.00, one third of which was cash; failing to pay the other instalments, he had to sue him out of possession at an expense of $100.00, all of which amounts are particularly set forth in his answer.

Upon the trial of the case the testimony of the parties themselves supported their respective theories of the contract. Other witnesses were introduced to testify as to the value of the land, for sale, its value for rent, and all matters of expense attending the use and occupation, as well as the expense of protecting the title, etc.

The jury returned a verdict finding Jones & Watson in debt to Bullard $686.36 on their note, and that the same be paid by them within ninety days or the land should be sold for the payment of the same. This verdict was construed by the court to mean that when Jones & Watson

paid the aforesaid sum the title to the land should vest in them, and it was so decreed.

The defendant moved for a new trial on the usual statutory grounds, besides others based upon charges given and refused by the judge.

There is no view in which we can look at this verdict, under the facts as established at the trial, that would authorize it to stand under the law. There never was any legal title in the complainants to this land, nor did they ever have a perfect equity upon which they could claim it..

The deed, it is true, was made in January, 1872, and standing by itself, could never have been enforced except as an equitable mortgage, and that only to the extent of the amount due for principal and ten per cent. interest thereon. It is also true, that even though usurious, if the parties came together in June, 1873, when there was no usury law in force, and agreed unconditionally that the land was to be taken by Bullard in payment of his debt against Jones & Watson, he delivering up to them their note for $2,631.58, and they delivering up to him his bond with the possession of the land, then Bullard would have had a good title to the land, although the Sutton deed was not taken up and a new one executed. *McCaskill vs. Lathrop & Co.*, 63 *Ga.*, 96. Nor would the title fail under such a contract if the land were surrendered, although the note and bond were not exchanged by reason of a mere inadvertance.

If, on the contrary, the parties did not thus agree, but Bullard agreed to take the land, sell it, pay himself and then turn over the excess to Jones & Watson, with no time specified within which it was to be done, and no agreement as to its use meanwhile, then in that case Bullard was bound' to use such diligence and effort to sell as good faith and fair dealing required. But if he failed to sell without fault or negligence on his part, and received during such time any benefit resulting from the use and occupation of the land, he would be liable to account for

the same. Coupled with this liability, there existed a corresponding right to such allowances for all legitimate expenses incurred in and about the performance of his obligation, as were necessary to make the land available for use, as well as to protect its ownership and possession.

Should the facts upon a trial be found with the theory and claim of Bullard, that necessarily ends the case. But if, on the other hand, with the complainants, then, coming into a court of equity as they have, they are bound to do equity, and should be made to account for all sums legally due the defendant, whether for loans received, or for all proper allowances to which he may be entitled.

In January, 1872, conventional interest as high as 10 per cent. per annum was collectible by law; and in June, 1873, any rate of interest agreed upon in writing was collectible. If, therefore, in June, 1873, these parties came together and stipulated that the interest should be two per cent. a month, it was legal, and the courts were bound to enforce it at that rate until paid. Not only so, but if in consideration of the further extension of the note, it was also agreed that the excess of interest over 10 per cent. included in the note of January, 1872, should be paid as part of the consideration for forbearance to sue and for the indulgence given, then the parties would be liable therefor. To make such liability, the agreement should be express and not implied from the mere renewal of the note. *Taylor vs. Thomas*, 61 *Ga.*, 472.

Taking, then, these several principles as the law of the case, the court below erred in refusing to charge as requested in the 10th and 12th grounds of the motion for a new trial, which were:

(10.) "If you believe that the amount of Bullard's note, when he bargained to sell to Walker, was more than the price at which he agreed to sell to Walker, and Jones and Watson stood by and knew such bargain to sell was made, and offered no objection thereto and acquiesced therein, you may consider that as a circumstance showing that

they understood their agreement with Bullard under which he went into possession to be in extinguishment of the debt."

(12.) "If the jury believe from the evidence that the land in question was surrendered to Bullard by Jones and Watson in satisfaction of the debt, and that Bullard went into possession and held the same as his own in satisfaction and settlement of the debt in question, and that it was agreed that the said bond for titles should be delivered up and canceled, then I charge you that complainants cannot recover in this action, though there may have been usury in the original debt, and though said bond was not in fact surrendered up and canceled, and the jury will so find."

The court erred in charging as follows :

(15.) "Now in reference to the claim for rents and profits, I charge you that if you find there was this agreement to take the land and dispose of it and pay off the note, and the defendant has not done so, then I charge you that the complainants have the right to the rents and profits, and Bullard must account for the same from the time he took possession till now. You will see how much these rents are from the evidence before you. The complainants also have the right to have the amount received from Walker credited on said note."

To charge Bullard with the rents from the time he took the land up to the trial, and to charge him " also " with the amount received from Walker, would be inequitable and unjust.

Besides these errors of law, if the calculations made and submitted by the counsel for defendants in error, were those adopted by the jury, or approximated them, then the rents charged Bullard were $200.00 a year higher than Watson, one of the complainants, swore that they were worth. Further, there was no allowance for the repairs, except to stand off the rent of 1875 against them, when that was one of the years the land was occupied by Walker,

and the whole amount received from him had been already charged up against Bullard.

Again, even if the debt of Bullard were reduced to $1,725.00, in June, 1873, which 10 per cent. on $1,500.00 would make, the agreed rate of interest afterwards due thereon would exceed $400.00 per annum—$100.00 more than Watson swore that the land was worth for rent a year; hence it is not easy to see exactly how the debt was reduced to $686.36 on any fair basis under the testimony.

Let the case be tried over in conformity to the principles herein set forth, and doubtless a fair and equitable verdict will be rendered.

Judgment reversed.

JACKSON, Chief Justice, concurring.

It seems that the principle ruled in *Houser vs. The Fort Valley Bank*, 57 *Ga.*, 95, was extended in the case of *Taylor vs. Thomas*, 61 *Ga.*, 472, so as to embrace usurious and illegal past interest in a new contract made when there was no law against usury. If so, I yield to it until reviewed, preferring to stand on the rule laid down in the 57th *Ga.*, limiting the new contract to future interest, and not permitting past usurious interest to be recovered on a new contract. My brother Speer also concurs in this view.