## CARTER *v.* GRIFFIN *et al.*

The fact that the grantor and grantee in a security deed agreed in parol that the latter should cancel the evidence of the debt so secured, and pay to the former a sum of money, and be thereafter vested with absolute title to the property conveyed by the deed, is admissible in evidence, and a proper subject of consideration by the jury, in a case where the heirs of the grantor are seeking to recover the land on the ground that the rents and profits received by the grantee have been sufficient to pay off the original indebtedness ; and this is true notwithstanding the fact that, subsequently to or contemporaneously with the making and execution of such contract, the parties entered into an agreement in writing, by the terms of which the grantee in such deed agreed to rent the land to the grantor for a named time at a stipulated price, with an option on the part of the grantor to repurchase said land within a given time at a named price.

(*a*) Such a parol contract was consistent with the writing and did not alter or vary its terms.

(*b*) If established, the legal effect of such a contract when executed would be to vest in the grantee a title free from the right of redemption at the expiration of the time limit of the option, provided the right of repurchase therein contained had not been exercised according to its terms.

Argued October 9,—Decided December 11, 1901.

Equitable petition.    Before Judge Estes.    Hall superior court. May 30, 1901.

The petition was by the heirs at law of Asa L. Griffin, deceased, against S. S. Carter.    It alleged, in brief, that Carter was in possession of a certain tract of land of which Griffin at the time of his death was the owner; that on March 1, 1890, Griffin executed a conveyance of the land to the Georgia Loan and Trust Company, as security for his note of that date for $1,200 principal, and for interest, and received from the company a bond conditioned to reconvey to him on payment of the debt; that Carter, while the title was still in the company, induced Griffin to execute to him a deed to the land as security for an alleged debt of $804, though Griffin's indebtedness to him at that time was less than $200; that when the note to the Georgia Loan and Trust Company matured, Griffin was not prepared to pay it, and Carter offered to advance the amount due the company, and did so, and received from the company a transfer of the note and a quitclaim deed to the land; and having so obtained the title, which he took as security only, Carter, to carry out a scheme to acquire absolute title to the land, proceeded to get possession of it, for a greatly inadequate consideration, tak-

ing advantage of the disparity in mental ability between himself and Griffin, who was old, infirm in body, and weak in mind, and who reposed great confidence in him; that in 1896 Carter notified Griffin that if he did not pay the debt, or give him an absolute deed to the land, or surrender possession of it, he would proceed at once to dispossess him; and Griffin, rather than be turned out of his home, which in his weakness he believed would be the consequence of refusal to comply with Carter's demand, yielded, and Carter took possession of the premises, except the dwelling which Griffin then and until his death occupied; that Griffin delivered to Carter the bond for title which he held, but Carter retained the note and the other evidences of indebtedness; and that Carter has since continued in possession of the premises, has received the rents, and has realized a large sum from the sale of timber which he caused to be cut from the land. The plaintiffs prayed for an accounting, and that they recover the land and have judgment for such balance as might be found to be due them by the defendant; or, if it should be found that there was a balance due the defendant, that it be decreed that the land be sold and the debt paid from the proceeds, and that the remainder of the proceeds, if any, be divided among the plaintiffs. The defendant in his answer alleged that he was the absolute owner of the land; that Griffin had sold it to him in satisfaction of the debt which he held against Griffin, and in further consideration of the payment of $235 in cash. He denied that he had taken advantage of Griffin, and denied the allegations as to Griffin's mental condition.

At the trial the defendant testified that in March, 1895, he proposed to give Griffin, for the land in question, the amount of Griffin's indebtedness to him; that Griffin said he would accept the proposition if the defendant would in addition pay him $250 in cash; that they agreed on $235 as the amount to be paid to Griffin as the difference, and he paid it to Griffin, and Griffin accepted it; that the agreement for the sale was oral, and was never reduced to writing; that Griffin's notes were marked paid, and the bond for title was canceled; that no one else was present when the trade was made; that after the trade had been made he offered to give Griffin a writing to the effect that Griffin should have the right to repurchase the land by paying him his money; that the writing was to be something like a bond; that the agreement to that effect

had nothing to do with the trade that had been made; that it was understood that a lawyer was to prepare the writing; that on May 24, 1895, they met again and signed a writing of the kind indicated; that the $235 was paid and the notes and the bond were canceled on the day on which this writing was signed; that at the time the trade was made Griffin owed him the amount of two notes, one for $1,296 — the sum he had paid the Georgia Loan and Trust Company for Griffin, and interest, and the other for $804 and interest, both dated March 13, 1893, and bearing interest from that date; that the amount due, together with the $235 paid to Griffin, made the sum of $2,657.41; that Griffin failed to pay any part of the sum stipulated in the written agreement, and delivered possession of the land to him, and he improved it, etc. The notes referred to were introduced in evidence. Across the face of each were written the words, "Paid by land bought, May 24th, 1895."

The written agreement of May 24, 1895, was introduced in evidence, and was as follows: "This contract, made and entered into this day between S. S. Carter of the one part and Asa L. Griffin of the other part, witnesseth : that said S. S. Carter has and does hereby rent to the said Asa L. Griffin that certain plantation [describing the land in question] which was conveyed by said Asa L. Griffin to' said S. S. Carter by deed dated March 13, 1893, for the year 1895, for the price and sum of (131.27) one hundred and thirty-one and twenty-seven one hundredths dollars, for which rent the said Asa L. Griffin has given to the said S. S. Carter his note of this date, due December 25, 1895, with interest after maturity at eight per cent. per annum. It is further agreed that if the said Asa L. Griffin shall and does pay to the said S. S. Carter the sum of ($2,657.41) twenty-six hundred and fifty-seven and forty-one hundredths dollars on or before the 25th day of December, 1895, in lawful money · of the United States, in addition to the said amount of said note for rent, then and in that event the said S. S. Carter hereby binds and obligates himself, his heirs, executors, administrators, and assigns, in the penalty of one thousand dollars of like lawful money, to make, execute, and deliver to the said Asa L. Griffin, his heirs and assigns, a good and valid quitclaim deed to the said hereinbefore-described land and premises and all the appurtenances thereto belonging, and to suffer the said Asa L. Griffin, his heirs and assigns, to remain in quiet and peaceable possession thereof. It is further

understood and expressly agreed that time is an essential part of this contract, insomuch that if the said Asa L. Griffin shall and does fail to pay to the said S. S. Carter as well the said $131.27, evidenced by said note for the rent, and the said sum of $2,657.41, by or before the said 25th day of December, 1895, then the said S. S. Carter shall have the right to proceed to collect said note for rent according to law, if not already paid, and shall also have the right and privilege to enter upon and take full and complete possession of said land and premises so hereinbefore described, with the appurtenances thereto belonging, without having to resort to any process of law whatever. And the said Asa L. Griffin is then and in that event to yield up, turn over, and deliver to said S. S. Carter, his heirs, executors, administrators and assigns, quietly and peaceably, full, complete, and ample possession of the said land and premises and every part and parcel thereof; in other words, if the said Asa L. Griffin fails to pay the said S. S. Carter the sum of ($2,788.68) twenty-seven hundred and eighty-eight and 68/100 dollars on or by said 25th day of December, 1895, then said S. S. Carter is to have possession of said land and premises and the appurtenances, and right of entry therein for that purpose, at any time after said 25th day of December, 1895, and said Asa L. Griffin is to give up possession of the same to said S. S. Carter. In witness whereof the said S. S. Carter and Asa L. Griffin have hereunto set their hands and seals this 24th day of May, 1895." (Signed and sealed by the parties.)

The attorney who prepared this contract testified as to what took place between the parties at the time it was signed, and, after stating that it covered all the transactions between them that day, except the cancellation of the notes and of the bond for title, testified as follows: "The notes and bond for titles were to be canceled and delivered that day and done away with, the way they expressed it, so that Mr. Griffin no longer owed Mr. Carter any debt, but that Mr. Carter owned the land; that was what they done and said." This testimony was ruled out on the ground that it contradicted the writing. The evidence as to the mental condition of Griffin was conflicting, some witnesses testifying that it was good, and that he was fully able to contract, and others that his mind was weak. Some of the witnesses testified that in 1895 the land was worth $5,000, others that it was not worth more than $3,000. The

verdict was as follows: " We, the jury, find for the plaintiff, and decree that the land in controversy be sold, and the cost of the sale be paid, and that S. S. Carter be paid the sum of $3,570.38, and the remainder, if any, be divided among the heirs of Asa L. Griffin, deceased." The defendant's motion for a new trial was overruled, and he excepted. The motion was on the grounds that the verdict was contrary to law and the evidence, and on other grounds which, so far as material to an understanding of the decision, are set out in the following opinion.

· *H. H. Perry* and *Howard Thompson*, for plaintiff in error, cited : Civil Code, §§ 3675, par. 1, 5204; 9 *Ga.* 156; 49 *Ga.* 518; 14 *Ga.* 434, 435; 63 *Ga.* 102; 68 *Ga.* 475; 7 Am. & Eng. Enc. L. (1st ed.) 91; 15 Am. & Eng. Enc. L. (1st ed.) 793; 7 Cranch, 218 ; Abbott's Trial Ev. (2d ed.) 361 ; 1 Gr. Ev. (15th ed.) §§ 275–284.

*N. L. Hutchins, A. J. Griffin,* and *H. H. Dean,* contra.

LITTLE, J. The contention of the plaintiffs in the court below was, that Carter held title as security to the land in question, for the amount paid by him to the loan company, and for his own original debt, and that the rents and profits of the land had been sufficient to pay these amounts ; while Carter contended that, by a parol agreement between himself and Griffin, the absolute title was vested in him in consideration of a settlement of the amounts due to him by Griffin, and his payment to the latter of the sum of two hundred and thirty-five dollars; and that this agreement was independent of the written contract in evidence. The jury returned a verdict, under the charge of the court, that the land be sold, and, after payment of costs, that Carter be paid a given sum of money and the remainder divided among the plaintiffs. We do not find it necessary to separately consider each of the grounds set out in the motion for a new trial; and, as the case goes back for another hearing, we place our judgment of reversal on those grounds which we deem necessary to be considered, in view of such other trial.

1. Among other errors assigned in the grounds of the motion are the following: The court charged the jury, " If you believe that these parties got together before this and spoke about selling the land, conveying title into Mr. Carter, I charge you that you could not consider this at all except by this writing, because this writing does say that Mr. Griffin had conveyed that land to Mr. Carter by

deed dated March 13, 1893; and if he conveyed it at any other time, it would be in conflict with that writing, and can not be considered by you as testimony in this case." The judge refused, on proper requests, to give the following charges to the jury: (*a*) "If you find from the evidence that the defendant, S. S. Carter, held a deed to the land in dispute, under a deed from Asa L. Griffin, the ancestor of plaintiffs, and said Asa L. Griffin held from Carter a bond for titles to reconvey the same land upon the payment of certain amounts due from Griffin to Carter, said Griffin would have had the right to pay the amount called for in the bond and demand a deed to the same from Carter. But if said Griffin, for a valuable consideration, surrendered the bond for title to Carter, to be canceled, this of itself, without any formal deed from Griffin to Carter, vested the entire title to the land in Carter." (*b*) "If you find from the evidence that while Griffin held the aforesaid bond for title he, the said Griffin, agreed, in consideration of the extinguishment of his debt to Carter and the payment of $235 in money, he would give up or surrender the land to Carter, and you further find that said debts were extinguished or canceled and said money paid to Griffin and accepted by Griffin in pursuance of such agreement, then I charge you that this would put the entire title in Carter, and Carter would then have had the right to the possession, although no formal deed, or deed of any kind, was made by Griffin to Carter." The court also ruled out certain evidence for the plaintiffs, to the following effect: "The notes and bond for titles were to be canceled and delivered that day and done away with, the way they expressed it, so that Mr. Griffin no longer owed Mr. Carter any debt, but that Mr. Carter owned the land; that was what they done and said."

It is evident that the charge of the court which is objected to, the refusal of the requests to charge, and the exclusion of the evidence sought to be introduced, were based upon the theory that by the written contract in evidence the agreements of the parties must be determined, and that to have given the charges requested, or to have admitted the evidence referred to, would have been, in legal effect, a ruling under which the terms of a written contract might be added to, altered, or varied by parol evidence. Recognizing, of course, the correctness of the proposition that this can not be done, we are yet of the opinion that the court erred in the charge given,

in the refusals to charge as requested, and in the rejection of the offered evidence; because, under the uncontested facts of the case, no such result would have been brought about by a different ruling. The written contract speaks for itself, and by its terms the rights of the parties in relation to the subject-matter therein contained are to be determined. Construing it, we find that on the 24th day of May, 1895, Carter agreed to rent to Griffin the land which is in dispute, which land the contract declares had been conveyed by Griffin to Carter on the 13th of March, 1893. The rental price, by agreement, was $131.27, and the time agreed on was the year 1895. In addition to this agreement to rent, it was further stipulated that if, on or before December 25, 1895 (time being expressly made of the essence of the contract), Griffin should pay to Carter the sum of $2,657.41, in addition to the rent before stipulated, then Carter by his quitclaim deed should convey the title to the land to Griffin, his heirs or assigns; and that if Griffin failed to pay this amount for rent, and the $2,657.41, on or before December 25, Carter should have the right to collect the note for rent, and enter and take possession of the land; and Griffin stipulated that he would, in the event of his failure to so pay, deliver possession of the land to Carter, his heirs or assigns. These are practically the only stipulations of the written contract; and in legal effect it is nothing more than an agreement for rent, with a privilege to Griffin to purchase the land within a given time, upon the payment of a specified sum of money. Thus construed, it is apparent that the refusal of the court to allow the jury to consider any agreements in relation to the extinguishment of Griffin's further claim to the land, or any prior agreements founded on a valuable consideration, by which Griffin agreed that the absolute title should be vested in Carter, as well as evidence that the parties agreed in parol that the notes and bond for titles should be canceled and marked paid, and that Griffin no longer owed Carter any debt, but that Carter owned the land, was erroneous. In the case of *McCaskill* v. *Lathrop*, 63 *Ga.* 96, it was ruled by this court that parol evidence of the settlement and of the terms thereof, and of the intention of the parties in canceling a bond and extinguishing an indebtedness and leaving a deed to stand, was admissible, it not appearing that any written memorial of these matters existed. In delivering the opinion in that case Mr. Justice Bleckley said: " No

law that we are aware of requires such an agreement to be in writing." In the case of *Jones* v. *Bullard*, 68 *Ga.* 472, it was expressly ruled, that where a deed had been made to secure the payment of a usurious debt, and a bond to reconvey was given, and afterwards the parties came together and the debtor surrendered the land absolutely to the creditor in payment of the debt, it being agreed that the bond should be delivered up and canceled, the title became fixed in the creditor and the debtor could not afterwards recover the land, though the bond may not, in fact, have been surrendered and canceled.

Therefore the fact that the agreement which Carter contends was made and executed was not in writing does not affect its validity, if in fact the parties assented to and executed it. The written contract, as we have seen, deals only with the rent of the land, and the option for its purchase at a given date. It impliedly recognizes Carter to be the owner of the land. The evidence which was excluded, and the facts which were supported by evidence that the defendant sought, by his requests, to have considered by the jury, were entirely consistent with the terms of the written contract. If it be true, as defendant contended, that he and Griffin had agreed that on the surrender to Griffin of the evidence of his indebtedness, and the vacation of the obligation of the bond for titles, and the payment of an additional sum of money, absolute title should thereafter be vested in Carter, it is manifest that the writing which was made between them was not intended to speak the whole contract. It is a well-recognized principle of law that parol evidence is admissible to prove other portions of a contract which are not inconsistent with the writing, when such writing does not purport to contain all the stipulations of the contract. As we have seen, a contract such as it was contended was made may be in parol, and even if it be insisted that it was the intention of the parties to put the whole contract in the writing, when it is shown that any part of the contract was omitted from the writing, parol evidence may supply that portion, provided it is not inconsistent with what has been written. *Douglass* v. *Bunn*, 110 *Ga.* 159. In this case the right of Carter to prove that he entered into a parol contract with Griffin, for a valuable consideration, by the terms of which the latter should yield all further claim to the land, and absolute title be vested in the former—since such a contract is not

inconsistent with the written contract for rent with option of purchase—is clear; and if the execution of such a contract by the parties is established, its effect would be to vest in Carter the absolute title for which he contracted; and a ruling which tended to exclude consideration of such facts was erroneous.  The terms of the written contract—or the written part of the contract, as the case may be—are plain and entitled to be enforced as written. But that agreement is not exclusive of proof of other distinct agreements which the parties may have made in relation to the land. The rule of evidence which favors contracts which are in writing excludes parol stipulations relating to the subject-matter of the contract, which add to, vary, or qualify the terms as written; but a contract which is consistent with these terms and of independent nature, when the writing does not, expressly or by implication, undertake to deal with any of its terms, may be set up and proved by parol evidence.  The question whether the parol contract was made is one for the jury.  In our judgment the court erred in the charge complained of, in his refusals to charge, and in the exclusion of the evidence to which reference has been made above.

*Judgment reversed.  All the Justices concurring.*